# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARISSA MALDONADO, *as representative of the estate of Aimee Nicole Doughty*, et al., | Case No. 1:24-cv-00102-KES-SAB |
| Plaintiffs, | ORDER DENYING DEFENDANTS' MOTION TO STAY THIS ACTION |
| v. | (ECF No. 30) |
| CITY OF FRESNO, et al., | |
| Defendants. | |

Before the Court is a motion to stay this action, or in the alternative stay certain aspects of the case management order, filed by Defendants City of Fresno, R. Harrell, E. Clairborne, and Paco Balderrama (collectively, "Defendants"). The Court held a hearing on this matter on April 9, 2025. (ECF No. 46.) Kevin Little, Esq. appeared for Plaintiff. Maya Sorensen, Esq. appeared for Defendants. Upon reviewing motion, the underlying papers, and the file in this case, the Court will deny Defendants' motion.

## I.

## BACKGROUND

This is a Section 1983 case with the underlying facts involving a police chase and ending in the death of Aimee Doughty ("decedent"). (ECF No. 1.) On November 22, 2022, decedent and Anthony Jeff ("Jeff") were traveling together in Jeff's Ford F-150. (Id. at ¶ 18.) Decedent did not know that Jeff was subject to an arrest warrant for allegedly violating the terms of his

1 post-release community supervision. (Id. at ¶¶ 20-21.)

2 At 7:50 a.m. that morning, the Fresno Police Street Violence Tactical Team began following Jeff, who eventually stopped at a gas station. (Id. at ¶¶ 23-25.) Decedent exited the truck on the passenger side, entered the gas station store, and then walked back to the truck near the driver's side door. (Id. at ¶¶ 23, 26.)

6 Officers then decided to attempt to arrest Jeff while the truck was parked. (Id. at ¶ 28.) However, Jeff immediately placed the vehicle in reverse and accelerated away from officers attempting to make an arrest. (Id.) Before giving chase, officers observed decedent jump into the bed of the truck. (Id. at ¶ 29.) Officers then initiated a vehicle pursuit. (Id. at ¶31.) Following a radio dispatch, other officers joined in the vehicle pursuit. (Id. at ¶ 33.)

11 At some point, officers employed a tactic involving another vehicle hitting the rear driver's side of the truck, which caused the truck to rotate counterclockwise, ejecting decedent out of the bed. (Id. at ¶ 37.) Jeff exited through the driver's side window and continued to give chase on foot, but he was eventually arrested. (Id. at ¶¶ 39, 40.) Officers began searching for decedent, who was found unconscious and transported to Community Regional Medical Center. (Id. ¶ 42.) On December 12, 2022, decedent was pronounced deceased, with the cause of death determined to be head trauma from a blunt impact. (Id. at ¶¶ 42, 44.)

18 On January 22, 2025, Plaintiff Marissa Maldonado as representative for decedent's estate commenced this action. (ECF No. 1.) In addition to Maldonado, Plaintiffs include decedent's six minor children (collectively, "Plaintiffs"). (Id.) Plaintiffs bring the following causes of action against Defendants: 1) excessive force; 2) loss of familial relationship; 3) municipal liability pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978); 4) wrongful death, Cal. Code. Civ. P. 377.60 et seq.; 5) violation of the Bane Act, Cal. Civ. Code § 52.1; 6) assault and battery under California law; and 7) negligence. (Id. at pp. 10-23.)

26 Initially, Plaintiffs included Jeff as a defendant in this action, but on April 26, 2024, Plaintiffs voluntarily dismissed Jeff as a defendant. (ECF No. 12.) On May 16, 2024, Defendants answered (ECF No. 17), and on July 2, 2024, the Court held a mandatory scheduling

1 conference with the parties and issued a scheduling order.  (ECF Nos. 22, 25.)  On February 12,
2 2025, Defendants filed their motion to stay, which has been fully briefed.  (ECF Nos. 30, 32, 33.)
3 On April 9, 2025, the Court held a hearing and heard argument from the parties.  (ECF No. 46.)
4 Defendants move to stay the entirety of this action pending the resolution of Jeff's related
5 criminal state-court proceedings.  (ECF No. 30, p. 15.)  In the alternative, Defendants move to
6 stay all case management deadlines (including substantive motion practice), while allowing the
7 parties to exchange written discovery and to depose third-party witnesses.  (Id.)  In their reply,
8 Defendants offer another alternative to stay this action through the end of the year.  (ECF No. 33,
9 p. 14.)

## II.

## LEGAL STANDARD

A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket."  Clinton v. Jones, 520 U.S. 681, 706 (1997), citing Landis v. North America Co., 299 U.S. 248, 254 (1936).  A stay is discretionary and the "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  Nken v. Holder, 556 U.S. 418, 433-34 (2009).  "Generally, stays should not be indefinite in nature." Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066-67 (9th Cir. 2007). Instead, district courts should "balance the length of any stay against the strength of the justification given for it."  Young v. I.N.S., 208 F.3d 1116, 1119 (9th Cir. 2000) (discussing that if a stay is especially long or its term is indefinite, a greater showing is required to justify it).

"The Constitution does not ordinarily require a stay of civil proceedings pending [the outcome] of criminal proceedings."  Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995).  Indeed, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Landis, 299 U.S. at 255.  "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence."  Id.  "Nevertheless, a court may decide in its discretion to stay civil proceedings . . . 'when the interests of justice seem to require such action.'"  Id. (citations omitted).

1   In the context of a criminal defendant simultaneously involved in a related civil lawsuit with claims brought through Section 1983, the Supreme Court has observed that where there are "related . . . rulings that will likely be made in a pending or anticipated criminal trial," it is "common practice" for the court "to stay the civil action until the criminal case or the likelihood of a criminal case is ended." Wallace v. Kato, 549 U.S. 384, 393-94 (2007).

When determining whether a stay is appropriate, courts look to "the extent to which the *defendant's* [F]ifth [A]mendment rights are implicated." Keating, 45 F.3d at 324, citing Federal Sav. And Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989) (emphasis added). Courts also consider (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. Keating, 45 F.3d at 324-25.

### III.

### DISCUSSION AND ANALYSIS

Defendants have moved for an indefinite stay this entire action, pending the resolution of criminal state-court proceedings against non-party Jeff—the driver of the vehicle from which decedent was thrown. (ECF No. 30.) In the criminal proceedings, the State is prosecuting Jeff for numerous crimes emanating from the same incident. (Id. at p. 7.) Defendants claim that "[u]ntil the resolution of . . . Jeff's criminal proceedings, it is unclear whether certain defense will be available to Defendants in this action, including but not limited to contributory negligence and apportionment of responsibility." (Id.) Defendants also note that until the criminal proceedings reach full disposition of the case, "Jeff is likely to invoke his Fifth Amendment right against self-incrimination, which would greatly impair Defendants' ability to conduct discovery and prepare for trial." (Id.) Defendants then assert that Plaintiffs would experience "little prejudice . . . because this action is still in its infancy." (Id.) Finally, Defendants state that there would be "no risk that any evidence would be lost or go stale as most

of the evidence would be preserved through the criminal proceedings." (Id.)

Plaintiffs respond that an indefinite stay is not warranted in this action for a variety of reasons, which undermine Defendants' contentions. (ECF No. 32, p. 2.) Essentially, Plaintiffs assert that Jeff is a non-party and his anticipated testimony is irrelevant to the issues in this civil proceeding. (Id.) Moreover, Plaintiffs highlight the indefiniteness of Defendants' request because Jeff has been subject to multiple competency hearings in the state court proceedings. (Id.) For the reasons set forth below, the Court agrees with Plaintiffs.

The Court begins with a summary of the state court proceedings regarding Jeff.

On November 28, 2022, the District Attorney for the State of California initiated criminal proceedings against Jeff. (ECF No. 30-2.)[1] By a criminal information, Jeff was charged on March 16, 2023, with 19 counts arising from the November 22, 2022 incident, including the murder of decedent, several counts of assaulting an officer with a weapon that is not a firearm, evading an officer causing an injury, reckless driving, driving in the opposite direction of traffic, and hit-and-run property damage. (ECF No. 30-3.) On December 7, 2023, the state court presiding over the criminal action denied Jeff's motion to dismiss the charges against him. (ECF No. 30-4, p. 26.)

In April 2024, the state moved to appoint counsel to represent Jeff regarding his competency and medication. (ECF No. 32, p. 48.) A hearing was held on May 23, 2024, and the court granted Jeff's motion to suspend proceedings. (Id. at p. 51.) Other competency hearings were continued at Jeff's request in September and November 2024. (Id. at pp. 54, 56.) In December 2024, the court held a hearing and found Jeff to be competent. (Id. at p. 57.) However, on January 16, 2025, the court noted that "[a] doubt has arisen as to the mental competence of the [Jeff]. Court now orders criminal proceedings suspended." (Id. at p. 59.) A hearing was scheduled for March 13, 2025, which the court continued at Mr. Jeff's request.[2]

---

[1] The parties have both provided the Court with state-court filings, as well as the docket in the criminal proceeding regarding Jeff. (ECF Nos. 30-2, 30-3, 30-4,30-5; ECF No. 32, pp. 12-60.) The Court finds it appropriate to take judicial notice of these exhibits. Fed. R. Civ. P. 201(b)(2); see United States v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.1992).

[2] At the hearing the Court inquired whether either party objected to the Court taking judicial notice of the most up-to-date version of the docket in Mr. Jeff's criminal proceeding in Superior Court of California, Fresno County. See

1  Another hearing was scheduled for April 3, 2025, which was continued at the State's request.
2  Even though the superior court continued the competency hearing, it reviewed, at the State's
3  request, a report and recommendation prepared by a referral doctor. After review, the court
4  found that Jeff was not competent and ordered that the criminal proceedings remain suspended.
5  At the time of this order, another competency hearing is scheduled for Mr. Jeff on May 15, 2025.

### A. This Proceeding and Jeff's Fifth Amendment Privilege

Defendants argue that the implication of Fifth Amendment rights "weighs heavily in factor of a stay." (ECF No. 30, p. 10.) Defendants train the Court's eye on the "identical set of facts" relating to the state-court criminal proceeding. (Id.) (emphasis omitted). Defendants also assert that Jeff "has the most relevant and necessary testimony for the defense in this action," and Jeff is likely to raise his Fifth Amendment right against self-incrimination until the resolution of the criminal proceeding. (Id. at p. 11) (emphasis omitted). Defendants claim that Jeff's anticipated invocation of the Fifth Amendment right would "severely prejudice Defendants' discovery efforts . . ." (Id.) (emphasis omitted). Plaintiffs oppose, arguing that Jeff is not a party to this action and that the authorities Defendants rely upon are fundamentally inapposite. (ECF No. 32, pp. 3-5.) The Court finds Defendants' arguments to be a strain and ultimately determines that this factor does not support imposing a stay.

From the outset, Defendants have incorrectly framed the legal standard on this factor. In Keating, the petitioner argued that an administrative law judge ("ALJ") impermissibly denied a stay in an administrative proceeding because the petitioner had other related ongoing criminal trials that demanded his attention. 45 F.3d at 325. While the ALJ was aware that the criminal trials and the administrative proceeding "involved potentially overwhelming quantities of documentary evidence," the ALJ nonetheless found that the petitioner had adequate time to prepare and that any burden on the petitioner "was far outweighed by the public interest in a speedy resolution of the case." Id. The Ninth Circuit agreed, concluding that these determinations were supported by the record. Id.

---

California v. Jeff, No. F22908378 (Cal. Super. Ct., Cnty. Fresno), https://www.fresno.courts.ca.gov/online-services/case-information. Neither party objected, and the Court finds it appropriate to take judicial notice of the docket up through the date of this order. Fed. R. Civ. P. 201(b)(2); see Borneo, Inc., 971 F.2d at 248.

1  Regarding the petitioner's Fifth Amendment right against self-incrimination, the
2  petitioner argued that the denial of the stay forced him to assert his Fifth Amendment privilege in
3  the administrative proceeding. The Ninth Circuit found this argument to be unpersuasive. Id.
4  As relevant here, the petitioner in fact asserted his Fifth Amendment privilege in response to
5  certain questions in the administrative proceeding. Id. In concluding that the ALJ had not
6  abused its discretion, the Ninth Circuit observed that "[a] defendant has no absolute right not to
7  be forced to choose between testifying in a civil matter and asserting his Fifth Amendment
8  privilege." Id. at 326. The Court continued, stating that "[n]ot only is it permissible to conduct a
9  civil proceeding at the same time as a related criminal proceeding, even if that necessitates
10 invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to
11 draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding." Id.,
12 citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). The Court counseled courts that "[i]n
13 deciding whether to proceed with the hearing, the extent to which the defendant's Fifth
14 Amendment rights are implicated is a significant factor for the ALJ to consider, but it is only one
15 consideration to be weighed against others." Id., citing Molinaro, 889 F.2d at 902. The Court
16 then noted that the ALJ's "discussion of the various considerations was exhaustive," and
17 therefore, the ALJ did not err. Id.

18  As should be apparent, Keating was in the context of a criminal defendant who was also a
19 party to a civil proceeding. Thus, to the extent that Keating even applies to this case, the most
20 the Court can logically extend Keating would be to reformulate the legal standard as follows:
21 "[i]n deciding whether to proceed with the hearing, the extent to which the [non-party's] Fifth
22 Amendment rights are implicated is a significant factor for the [court] to consider, but it is only
23 one consideration to be weighed against others." Id. Therefore, Defendants ancillary arguments
24 regarding the identical nature of state-court criminal proceeding versus the civil proceeding, that
25 Jeff will likely invoke his Fifth Amendment privilege, and the prejudice Defendants allegedly
26 will suffer are not aspects for the Court to consider under this factor. Rather, the Court will
27 closely hew to the Ninth Circuit's guidance in Keating.
28  Here, Jeff is a non-party witness. Indeed, the Court finds it a stretch for Defendants to

7

invoke the constitutional rights of a non-party where almost all the caselaw on which they rely includes cases where a criminal defendant is also a party in a civil proceeding. Gates v. Sergent, No. 2:22-cv-1576 DAD CSK P, 2024 WL 2117031 (E.D. Cal. Apr. 26, 2024) (staying the plaintiff's civil case where the plaintiff was also a defendant in a parallel criminal action); Lute v. Silva, No. 1:20-cv-01122-NODJ-CDB (PC), 2024 WL 402809 (E.D. Cal. Feb. 2, 2024) (same); Steinmetz v. City of Laguna Beach, No. 8:21-cv-02112-JVS-DFM, 2022 WL 21781827, at *1 (C.D. Cal. Jan. 28, 2022) (same); Valenzuela v. Santiesteban, No. 1:20-cv-01093-NONE-BAM (PC), 2021 WL 1845544 (E.D. Cal. Apr. 9, 2021) (same); Sanders v. City of Pittsburg, No. 18-cv-04326-SK, 2018 WL 11255605 (N.D. Cal. Nov. 21, 2018); McCormick v. Rexroth, No. C 09-4188 JF, 2010 WL 934242 (N.D. Cal. Mar. 15, 2010) (same); see Wallace, 549 U.S. at 394-95 (observing the same as a "common practice" in the district courts); see also Harris v. Arden, No. 1:21-cv-00818-KES-CDB (PC), 2024 WL 3205194, at *1 (E.D. Cal. June 27, 2024) (denying reconsideration of same); Lopez v. City of Anaheim, No. SACV22-1351JVS (ADSx), 2022 WL 16859969 (C.D. Cal. Oct. 20, 2022) (granting a 90-day stay where individual civil defendants were also under investigation by the California Department of Justice).

In any event, the extent to which Jeff's Fifth Amendment rights are implicated *in this proceeding* appear to be minimal. To be sure, there is an ongoing criminal proceeding against Jeff that involve the underlying facts of this action. However, Jeff's rights have little bearing on the case at bar. Jeff is not a defendant, nor have Defendants persuasively argued that Jeff's testimony is necessary. Simply because a non-party witness might invoke their Fifth Amendment privilege cannot render that non-party's Fifth Amendment rights to be "extensive" in a separate lawsuit.

Therefore, the Court finds that Jeff's Fifth Amendment rights do not weigh in favor of granting a stay.

**B.    Interest in Plaintiffs Proceeding Expeditiously and Prejudice**

Defendants argue that Plaintiffs will experience little prejudice from the requested stay at this juncture. (ECF No. 30, p. 12.) Defendants characterize this case as in its "infancy, having only been filed on January 22, 2024." (Id.) In addition, Defendants argue that there would be

1 little likelihood of witnesses' memories fading or evidence being lost because of the ongoing
2 criminal proceeding.  (Id.)  Plaintiffs respond, arguing that an indefinite stay of the case might be
3 extensive and that Plaintiffs deserve their day in court within a reasonable timeframe.  (ECF No.
4 32, pp. 5-8.)   In their reply, Defendants attempt to describe how the stay, though indefinite,
5 might be "brief."  (ECF No. 33, p. 12.)

6       To begin with, the public interest in the prompt resolution of civil rights claims cannot be
7 overstated.  Therefore, the Court accords due weight to Plaintiffs and their desire for a prompt
8 resolution.

9       While the Court finds some merit to Defendants' contention that evidence and memories
10 are at a lesser risk of becoming stale due to Jeff's state-court criminal proceeding, the Court is
11 persuaded by Plaintiffs' argument that Defendants' request for an indefinite stay is untenable
12 here.  (ECF No. 32, pp. 5-6.)   Recall, Defendants move for an indefinite stay pending the
13 resolution of Jeff's criminal state-court proceeding.  (ECF No. 30, p. 15.)  In the alternative,
14 Defendants essentially request a stay while allowing the parties to engage in written discovery
15 and to depose third-party witnesses.  (Id.)  However, as Plaintiffs have explained, the docket in
16 Jeff's criminal case demonstrates that Jeff's competency appears to be a perennial issue in the
17 state-court proceedings.  (ECF No. 32, pp. 48-60.)  Because the Constitution and California state
18 law require that a criminal defendant be competent to stand trial, People v. Rogers, 39 Cal. 4th
19 826, 846 (Cal. 2006), Plaintiffs point regarding this type of delay is well-taken.  In their reply,
20 Defendants acknowledge that Jeff's competency has become an issue but "that question will
21 likely be resolved prior to the hearing on this motion."  (ECF No. 33, p. 9.)  However, at the
22 hearing it was revealed that the superior court had recently found Mr. Jeff to be "not competent"
23 and the criminal proceeding remains suspended.  Competency can ebb and flow as already
24 demonstrated by Jeff.  Therefore, the Court finds unpersuasive Defendants' conjecture that it is
25 "very likely that the criminal proceedings will be concluded this year."  (Id.)

26       In addition, Plaintiffs note that Jeff's Fifth Amendment privilege persists beyond trial, the
27 Court notes that at least through direct appeal or possibly other collateral proceedings.  See Cal.
28 Penal Code § 1018.  Accordingly, even if Jeff's trial were to conclude by December 2025 and

1  judgment entered therefor, there still might be considerable time in which Jeff may rely upon his
2  Fifth Amendment privilege.  In their reply and at the hearing, Defendants gloss over that there
3  might in fact be a trial and seemingly ask the Court to assume that Jeff will enter a plea of guilty,
4  which would resolve the issue of Jeff's Fifth Amendment privilege sooner.  But see Cal. Penal
5  Code § 1018.  And while Defendants take issue with Plaintiffs characterization that the stay
6  might potentially extend to years, the Court notes that Defendants fight "pure speculation" with
7  their own.  The exact bounds of the length of time to which Jeff's Fifth Amendment privilege
8  will extend remains indeterminable, and therefore, the Court finds that Plaintiffs have the better
9  argument on this point.

10  Given Plaintiffs interest in the prompt resolution of their civil rights case—along with the
11  possibility of an undefined, extended stay—the Court finds that this multifaceted factor does not
12  support staying this action.

13  **C.  Burden on Defendants**

14  Defendants argue that they will suffer great prejudice because Jeff is the key percipient
15  witness in this matter.  (ECF No. 30, p. 12.)  Defendants also posit that Jeff's actions were the
16  direct and proximate cause of the death of decedent.  (Id. at p. 13.)  Plaintiffs respond that Jeff's
17  testimony has not critical to the adjudication of Plaintiffs' claims, and therefore, Defendants'
18  argument on this point is overblown.  (ECF No. 32, p. 6.)  Having considered the arguments, the
19  Court will find this factor to be neutral.

20  Defendants characterize Jeff as the "key percipient witness" in this matter.  (ECF No. 30,
21  p. 12) (emphasis omitted).  Defendants then state that if Jeff asserts his Fifth Amendment
22  privilege, Defendants' discovery efforts as well as their ability to mount a defense will be
23  severely hampered.  (Id.)  For example, regarding Plaintiffs' negligence claim, Defendants assert
24  Jeff's actions were the direct and proximate cause of decedent's injuries, which led to her death.
25  (Id.)  Defendants offer no more substance to these arguments in their papers.  At the hearing, the
26  Court inquired as to what testimony Defendants sought from Jeff.  Defendants stated that they
27  wanted to question Jeff on three topics.  First, whether Jeff knew decedent was in the truck bed.
28  Second, whether Jeff believed the officers were in-fact officers and if he believed they posed an

immediate threat. Third, whether decedent and Jeff had discussions before decedent jumped into the back of the truck. The Court then asked Defendants how this testimony was relevant to the case and to their defenses. Following an extensive back-and-forth, the only issues Defendants identified were causation and contributory negligence for Plaintiffs' negligence claim. Even still, Defendants remained unable to connect the testimony they seek from Jeff to the issues of causation and contributory negligence.

In their opposition, Plaintiffs argue that Jeff's testimony is not necessary to the adjudication of *Plaintiffs'* claims. Plaintiffs frame the legal issues as 1) what information the officers knew at the time of the incident; 2) whether the officers were justified in initiating a high-risk pursuit; 3) whether the officers applied excessive force; 4) whether the officers violated department polices and/or training standards; and 5) whether the City of Fresno maintained unconstitutional policies or failed to properly train its officers. (ECF No. 32, p. 6.) The Court agrees with Plaintiffs that the answers to these legal questions do not appear to depend upon Jeff's testimony but on the observations by and knowledge of the officers.

To be sure, Plaintiffs have brought a claim of negligence, and causation and contributory negligence are legal issues as Defendants have indicated. However, Plaintiffs have identified other evidence that Defendants have access to, including 1) police reports; 2) officer body camera footage; 3) surveillance video from the gas station; 4) witness statements; and 5) accident reconstruction reports. With this type of evidence, the Court finds that Defendants have not sufficiently articulated that Jeff's testimony, though potentially helpful, would be necessary in order to attack Plaintiffs' claim of negligence or Defendants' defense of contributory negligence and apportionment of responsibility.

Therefore, while there might be some minimal prejudice to Defendants in not granting a stay, the Court finds that this factor to be neutral because Defendants have failed to identify how Jeff's testimony would be essential to attacking Plaintiffs' claims or establishing Defendants' defenses.

    **D.    Efficient Use of Judicial Resources and the Public Interest**

Regarding these two factors, Defendants argue that the public has an interest in ensuring

that the criminal process is not subverted. (ECF No. 30, p. 13.) Defendants also argue that imposing the stay would prevent two courts from simultaneously examining the same issues and facts. (Id.) Finally, Defendants cite to the "common practice" of staying a civil action pending a parallel criminal proceeding. (Id. at p. 14.) The Court is not persuaded.

Of course, the public has an interest in ensuring that the criminal process is not subverted. However, Defendants have not argued how this civil proceeding would impact or diminish Jeff's criminal proceeding.

Instead, Defendants continue on, arguing that facts disclosed at the criminal trial might shed light on the civil case. While the same universe of facts will be present in both Jeff's criminal proceeding and this civil proceeding, Defendants have identified no facts or legal conclusions that would be decided in the criminal proceeding that would be helpful for this Court regarding *Plaintiffs'* claims. Indeed, even if the criminal proceeding were to go to trial, a jury renders a verdict, and a court enters judgment, the most this Court could do would be to take judicial notice of such proceedings and that a judgment was entered against Jeff. The factual record would still have to be developed in *this* case. Additionally, the legal issues before this Court are not before the court in the criminal proceeding. Plaintiffs' claims center on alleged violations of constitutional rights and state law duties owed by state actors *to decedent*.

Finally, the Court notes that Defendants take out of context the citation to the common practice of staying civil cases where there is a criminal action that stems from the same incident. Again, this "common practice" is in the context of a criminal defendant who is also in a parallel civil proceeding, especially a Section 1983 context where the availability of the civil action may depend on the outcome of the criminal proceeding. Harris, 2024 WL 3205194, at *4-*5, discussing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Gonzalez v. City of Bakersfield, No. 1:23-cv-00208-ADA-CDB, 2023 WL 2760906, at *2 (E.D. Cal. Apr. 3, 2023) (same). Therefore, this argument is without force.

Defendants' reliance on Douglas v. United States is a strain. 2006 WL 2038375 (N.D. Cal. July 17, 2006). As relevant here, in Douglas, the plaintiffs brought a civil action suing the United States seeking a refund of more than $14 million in individual income taxes paid. Id. at

12

\*1. The United States cross-complained, alleging that the plaintiffs owed penalties of approximately $5.7 million. Id. Meanwhile, there was an ongoing investigation into "a criminal [tax] scheme that potentially has defrauded the Government of $1.8 billion in taxes" that potentially intersected with the claims in Douglas. Id. at \*4, \*6. Significantly, the plaintiffs stipulated to a stay "with carved-out exceptions," and the criminal trial was set to commence two months from the district court's order and projected to finish within six months. Id. at \*4.

The only issue before the district court was one objection by the plaintiffs over whether to stay "discovery on the issue of whether the Douglases' filed a qualified amended [tax] return." Id. The court found that the plaintiffs did not have a strong interest in proceeding with their case because of the "links to the [criminal] case, [and] staying the proceeding will potentially allow both sides to make use of materials in the [criminal] case to narrow the issues." Id. Regarding the government's interest, the court found that this factor favored granting a stay because in order for the government to develop its crossclaims and its defenses in the civil suit, it would need to demonstrate that the plaintiffs' tax return was "fraudulently filed and therefore is not a qualified amended return." Id. at \*5. In order to prove their case (and defense) the government needed to depose several witnesses involved in the criminal proceeding, who were all at least likely to testify at that criminal trial. Id. The court noted that these individuals might invoke their Fifth Amendment privilege, which would frustrate the government's ability to prove their counterclaim and defenses. Id. The court also observed that the civil depositions of the individuals in the criminal proceeding might subvert the criminal process insofar as allowing the defendants in the criminal trial to have a preview of the government's strategy and tailoring their case accordingly. Id. For judicial efficiency, the court found that this factor weighed in favor of a stay because of the similar players and transactions involved in both the civil and criminal proceeding. Id. The Court then found that while the plaintiffs had an interest in speedy resolution of their claims, balanced against the criminal trial seeking to take down a criminal scheme of defrauding the government of $1.8 billion of taxes, the public interest factor weighed in favor of a stay. Id. at \*6. Therefore, the court concluded that the factors in Douglas supported granting the government's motion for a stay "for deposition discovery on the question of whether

the Douglases filed a qualified amended return." Id.

The Court does not find Douglas to be "on point" for several reasons. To start, the criminal trial in the related proceeding in Douglas was already scheduled and slated to finish within six months of that court's order. Moreover, while there were third-party witnesses in Douglas, it is not an exact analogy because the witnesses in Douglas were also likely to be witnesses at the criminal trial. Here, Jeff would be a witnesses in the civil proceeding and is the criminal defendant in the criminal trial. Therefore, the concern the Douglas court had about subverting the criminal proceeding is not present here because Jeff could not reveal to himself in a deposition unknown information and thus tailor his defense. The court in Douglas also found that in order for the government to prove its case and defenses, it would need to depose several witnesses in the criminal proceeding. Here, Defendants have not persuaded the Court that their case hinges on Jeff's testimony. And while not dispositive, the Court notes that the plaintiffs in Douglas essentially agreed to stay except as to one issue, which was the only issue before the district court.

Regarding whether the criminal trial of Jeff would decide or narrow issues in this civil action, Defendants have not argued persuasively that the same legal issues might be decided or narrowed by the criminal proceeding. Defendants state that three of the counts against Jeff are for assaulting police officer in violation of California Penal Code § 245(c). (ECF No. 33, p. 14.) In order to find Jeff guilty of these counts, a jury would need to find that the officers were lawfully "'engaged in the performance of [their] duties' when Jeff assaulted them." (Id.) Further, Defendants state that an officer cannot be engaged in "lawful" performance of his or her duties unless the officer was using appropriate force during the course of effecting the arrest. (Id.) As should be apparent, whether or not police officers were lawfully engaged in the performance of their duty *when Jeff assaulted them* has little or no bearing on the officers' actions toward decedent during the vehicle chase. Additionally, Defendants have not explained the bases of these counts, which actions may have occurred after decedent was thrown from the truck bed and Jeff gave chase on foot. Finally, the Court observes that at present, the criminal information is a set of contested accusations and that the counts of assaulting a police officer

may not got to trial or be included in a judgment following a plea deal.  In sum, the Court finds Douglas to be distinguishable and not persuasive.

Accordingly, the factor does not support entering a stay.

### E. Interests of Non-Parties in this Proceeding

The parties do not discuss this factor nor is it readily apparent to the Court that this factor is present beyond its discussion regarding Jeff.  Therefore, the Court finds this factor is neutral.

Balancing the above factors, the Court finds that a stay in not warranted in this action. Nor is Defendants' alternative request, raised in their reply, to stay this action through December 2025.  That said, the Court is amenable to a future request by Defendants to reopen discovery for the deposition of Jeff should Jeff's Fifth Amendment privilege no longer be implicated at a later date.

## IV.

## CONCLUSION AND ORDER

For the forgoing reasons, Defendants' motion to stay is DENIED.

IT IS SO ORDERED.

Dated:  **April 11, 2025**

STANLEY A. BOONE
United States Magistrate Judge

15